Chauncey M. Mahan
1230 Market Street #307
San Francisco CA 94102

Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

CHAUNCEY M. MAHAN,

    Plaintiff,

vs.

Case No. **CV16 2024**

**COMPLAINT**

Juan Perez; Miles Cooley;
CITY OF LOS ANGELES, a municipal corporation;
Los Angeles Police Department; Officer Shepal, officer;
Beth Sheppard, Detective; Tim Torsney,
Lieutenant; Harvey Martin, Detective;
Any Other Unknown Officers; in their official capacities
CITY OF NEW YORK, a municipal corporation; New York Police Department;
Merrill Michael, Sergeant;
PAA Chudavala, Officer; Lt. Kotlyard, Lieutenant;
Any Other Unknown Officers; in their official capacities

    Defendants.

### PRELIMINARY STATEMENT

This is a civil right action filed by Plaintiff Chauncey M. Mahan, pro-se, a U.S. citizen of the state of California, 1230 Market Street #307, San Francisco, California 94102.

This Complaint is for damages and relief arising from violations of the Fourth, Fifth, and Fourteenth Amendment of the U.S. Constitution; The California Constitution, Article 1 Declaration of Rights, Section 7 (a);The Constitution of The State of New York, Article I, Bill of Rights; 42 USC Sections 1983, 1985; and The Theory of Respondeat Superior (Vicarious Liability) 42 USC Section 1988.

1

Plaintiff has filled this complaint, pro se while the court must liberally construe a pro se complaint, see Estelle v. Gamble, 429 U.S. 97 S. Ct. 285, 50 L.Ed. 2d 251(1976), and a pro se complaint is subject to "less strigent standards than formal pleadings drafted by lawyers", see Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652(1972). It is not necessary that the court guess intent of pro se parties. "Principles are not ...without limits and our precedent does not require courts to construct full blown claims from sentence fragments.

## JURISIDICTION

1. Jurisdiction before this Court is proper pursuant to Bivens v. Six Unknown Named Agents, 403 U.S 38 8, 29 L.Ed. 2d 619, 91 S.Ct. 1999 (1971)(42 USC Section 1983)
2. Jurisdiction before this Court is proper pursuant to 28 USC Sections 1341 and 1343 (a)(3); as some of the issues imply Federal Question Jurisdiction;
3. Jurisdiction before this Court is proper pursuant to 18 USC Sections 241, 242;
4. Jurisdiction before this Court is proper pursuant to 42 USC 1985(3);
5. Jurisdiction before this Court is proper pursuant to "the Courts supplemental jurisdiction over plaintiff's state claims under 28 USC Section 1367
6. Jurisdiction is proper pursuant to 18 U.S.C.A. Sections 1332(a)(1) and the matter in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00).
7. Jurisdiction is further proper pursuant to 42 USC Section 1988 "The Theory of Respondeat Superior (Vivacious Liability),"

## PARTIES

8. The Plaintiff Chauncey M. Mahan is a U.S citizen who business address is P.O. Box 1230 Market Street #307, San Francisco, CA 94102, and a resident of San Francisco California.

9. The Defendant Juan Perez is an executive officer for Roc Nation a limited liability company in the State of Delaware, and a resident of New York. Juan Perez was the owner of Baseline Studios and was the individual who initiated a (false statement) bogus claim of "grand larceny" in New York, (Manhattan);i {and as a direct result of those claims} it exacerbated into "extortion" in Los Angeles (Beverly Hills); "possession of stolen property" in Los Angeles (Devonshire). Mr. Perez conspired with Miles Cooley (Roc Nation's attorney) against my constitution rights as a citizen, (pursuant to 42 USC Section 1985) when Miles Cooley erroneously reported to the Los Angeles Police Department (LAPD) that the property which I allowed him to inventory in my storage was stolen. This defendant address is 1411 Broadway, Floor 39, New York, NY 10018-3410.

10. Defendant Miles M. Cooley a is partner in the Law Firm Reed Smith LLP. He was Roc Nation's City based litigation counsel that was instructed to meet me at my storage unit and who later contacted the LAPD that my property which was in my storage unit had been stolen. Miles Cooley conspired with Juan Perez against my constitutional rights as a citizen, (pursuant to 42 USC Section 1985) he also conspired under the color of law ( 18 USC Sections 241,242). As an attorney (officer of the court ) he violated my due process and equal protection of law by filing a false police report. He had a duty to uphold the Constitution of the State of California and the U.S. Constitution. This defendant address is 355 S. Grand Ave. #2900, Los Angeles CA 90071

11. Defendant Officer Shepal is one of the officers of LAPD, Devonshire Division who confiscated my property without a search warrant (Court Order) violating my Constitutional Rights to search and seizure, due process , and equal treatment of law. Nor did he put me on notice that my property was confiscated and an opportunity to redeem it, coupled with the fact that I was unconstitutionally deprived of my liberty by a false arrest. He had a duty to uphold the Constitution of the State of California and the U. S.

Constitution. At all times mentioned he was acting "Under the Color of State law." This Defendant's address is LAPD, Devonshire Division, 10250 Etiwanda Ave, Los Angeles, CA 91324.

12. Defendant Detective Beth Sheppard is one of the officers of LAPD, Devonshire Division who confiscated my property without a search warrant violating my Constitutional Rights to search and seizure, due process, and equal treatment of law. Nor did she put me on notice that my property was confiscated and an opportunity to redeem it, coupled with the fact that I was unconstitutionally deprived of my liberty by a false arrest. Subjectively, Detective Sheppard knew that she was violating my constitutional rights because the bogus charges against me were dropped and at that point my property should have been returned. She had a duty to uphold the Constitution of the State of California and the U. S. Constitution. At all times mentioned she was acting "Under the Color of State law." This Defendant's address is LAPD, Devonshire Division, 10250 Etiwanda Ave, Los Angeles, CA 91324.

13. Defendant Lt. Tim Torsney is one of the officers of LAPD, Devonshire Division who confiscated my property without a search warrant violating my Constitutional Rights to search and seizure, due process, and equal treatment of law. Nor did he put me on notice that my property was confiscated and an opportunity to redeem it, coupled with the fact that I was unconstitutionally deprived of my liberty by a false arrest. Subjectively, Lt. Torsney knew that he was violating my constitutional rights because the bogus charges against me were dropped and at that point my property should have been returned. He had a duty to uphold the Constitution of the State of California and the U. S. Constitution. At all times mentioned he was acting "Under the Color of State law." This Defendant's address is LAPD, Devonshire Division, 10250 Etiwanda Ave, Los Angeles, CA 91324.

14. Defendant Detective Harvey Martin is one of the officers of LAPD, Devonshire Division who confiscated my property without a search warrant violating my Constitutional Rights to search and seizure, due process, and unequal treatment of law. Nor did he put me on notice that my property was confiscated and an opportunity to redeem it, coupled with the fact that I was unconstitutionally

deprived of my liberty by a false arrest. Subjectively, Detective Martin knew that he was violating my constitutional rights because the bogus charges against me were dropped and at that point my property should have been returned. He had a duty to uphold the Constitution of the State of California and the U.S. Constitution. At all times mentioned he was acting "Under the Color of State law." This Defendant's address is LAPD, Devonshire Division, 10250 Etiwan.da Ave, Los Angeles, CA 91324.

15. Defendant Sergeant Merrill Michael, is the supervisor of the New York Police department (NYPD) that approved a bogus criminal complaint to be filed against me in New York with fictitious dates (only to comply with the long expired statue of limitations), and erroneous charges to justify and conspire with the LAPD to illegally confiscate my property. Not only did he conspire against the rights of a citizen, he also did it under the color of law. Subjectively, Sergeant Michael knew that he was violating my constitutional rights to due process, and equal treatment of the law because he allowed the complaint to depict fictitious dates. He had a duty to uphold the Constitution of the State of New York and U.S Constitution. At all times mentioned he was acting "Under the Color of State law." This Defendant address is One Police Plaza, New York, New York 10038.

16. Defendant PAA Chudavala, officer of the NYPD who filed a bogus criminal complaint with fictitious dates of an alleged crime (only to comply with the long expired statue of limitation), and erroneous charges to justify and conspire with the LAPD to illegally confiscate my property. Subjectively PAA Chudavala knew he/she was violating my constitutional rights because he/she allowed the complaint to depict fictitious dates. As a direct result of the bogus report my property was illegally confiscated denying me due process, and equal treatment of the law, and I was unconstitutionally deprived of my liberty. He/she had a duty to uphold the Constitution of the State of New York and U.S Constitution. At all times mentioned he/she was acting "Under the Color of State law." This Defendant address is One Police Plaza, New York, New York 10038.

17. Defendant Lt. Kotlyard, was the signoff supervisor who approved the bogus criminal complaint in which the statue of limitations had long expired. He conspired with his fellow officers against the rights of a citizen to illegally confiscate my property and he also did it under the color or law. As a direct result my due process and equal treatment of law was violated, and I was unconstitutionally deprived of my liberty. He had a duty to uphold the Constitution of the State of New York and U.S Constitution. At all times mentioned he was acting "Under the Color of State law." This Defendant address is NYPD, One Police Plaza, New York, New York 10038.

18. The City of Los Angeles is a municipal corporation that is the employer of the Los Angeles Police Department. The City of Los Angeles is liable for the actions of the LAPD and it's officers pursuant to 42 USC Section 1988 "The Theory of Respondeat Superior (Vicarious Liability)," This defendant address is 200 N. Spring Street, Room 360, Los Angeles, CA 90012.

19. The City of New York is a municipal corporation that is the employer of the New York Police Department. The City of New York is liable for the actions of the NYPD and it's officers pursuant to the Theory of Respondeat Superior. This defendant address is: 141 Worth Street, New York, NY 10013. The facts of the case are a follows:

### FACTS

My formal education and training consists of studies in music composition at Brooklyn College in New York City.

In 1985, I attended Mannes College of music, the New Schools music in New York, where I majored in music composition & arranging.

In 1987, I received certification as a sound engineer from the Center for the Media Arts located in New York City.

I have collaborated with BILLBOARD Magazine chart topping artist signed to major labels in the popular music genres of hip-hop, pop, R&B, jazz, dancehall and electronic dance music.

I have also collaborated with the following major label recording artist: Whitney Houston, Chaka Khan, LL Cool J, Kanye West, D-Nice, Beanie Man, Super Cat, Clives & Coles, Funkmaster Flex, Notorious B.I.G., 112, Total, Da Brat, Missy Elliot, R Kelly, Debra Cox, Heather Headley, Lo-Key, Intro, The Lox, Eve, Beanie Siegel, Memphis Bleek, and Jay Z.

It was my specialized "ear" for what makes certain sound recordings popular, particularly in the rhythmic genres of hip-hop, R&B, and electronic dance music that allowed me to work with an array of diverse artists. I possess an ear, which I had acquired over decades of listening to music in clubs or on the radio, combined with extensive formal training in musical composition and arrangement and a certified degree in sound engineering.

As of August 1999, I possessed the technical skills and artistic sensibility required to collaborate meaningfully in the co-authorship of professionally realized sound recordings featuring BILLBOARD chart topping, Grammy winning recording artists.

I also had years of hands on experience operating the then-current state –of –the art technology (including *Fairlight, Synclavier, Sound Designer I & II and Pro Tools*) to create high-quality sound recordings suitable for release by major record labels.

In 1993, my contributions as a sound engineer, music programmer was recognized in connection with Whitney Houston's Grammy Nominated smash hit *I'm Every Woman*, which was featured on the original soundtrack for the BODYGUARD, a blockbuster motion picture released in 1992.

The soundtrack for the BODYGUARD won the Grammy award for Album of the Year and was certified as 17x multi-Platinum by the Recording Industry Association of America ("RIAA"). It continues to be one of the most popular soundtracks in history. **[See CHAUNCEY MAHAN VS. ROC NATION, LLC, ROC-A-FELLA RECORDS, LLC, SHAWN CARTER p/k/a "JAY Z", Case no. 14-cv-5075 (LGS), United States District Court for the Southern District of New York, Exhibit A].**

In 1996, the National Academy of Recording Arts recognized my contributions as a sound engineer ("NARAS") in connection with rapper LL cool J's Grammy-award nominated album *Mr. Smith. **(I.d. Exhibit B).***

In 2000, my authorship contributions as a record producer, sound engineer and music programmer was recognized by NARAS in connection with songs featured on the Grammy-award nominated album Vol. 3...*Life and Time of S. Carter {I.d. Exhibit C}.*

In 1995, Jay Z co-founded ROC-A-FELLA RECORDS (RAF) as a record label based in New York City.

RAF released sound soundings in the musical genre of "hip-hop," which is also known as "rap."

In 1997, Def Jam Recordings acquired a 50% ownership interest of RAF.

In 1998, Universal Music Group, via its subsidiary Universal Recordings, Inc. ("UMG"), purchased Def Jam Recordings and merged it with Island Records to form the "Island / Def Jam Music Group" (IDJ).

At all relevant times after UMG's acquisition of RAF in 1998, RAF operated under the direct supervision and control of UMG.

As of August 1, 1999 the roster of recording artist associated with RAF label included Jay Z, Beanie Siegel, and Memphis Black.

RAF has not released any albums under the trade name Roc-A-Fella Records since 2011.

As of the date of the initial filing of my civil action, RAF's business activities are directed or controlled or supervised by UMG.

In 2008, Carter organized a limited liability company in the State of Delaware under the entity name Roc Nation, LLC.

Roc Nation, LLC is described on its website as a "full-service entertainment company, inclusive of artist, songwriter, producer and engineer management; music publishing; touring & merchandising; film and television; new business ventures; and a music label." www.rocnation.com (accessed June 11, 2014).

Between August 1, 1999 and November 15, 2000 (the "Collaboration Period"), UMG's agents referred to afterwards as "A&R executives," IDJ, RAF, and Jay Z commissioned me as an independent contractor. My constituent roles are as follows: producer; engineer; programmer; editor; mixer and administrator. I was never employed by any of those entities.

My educational background enhanced me with the opportunity to spearhead classical music & Jazz. I have always been a pioneer in advanced technology. In and around 1986 I became an early adopter of a 16-bit music workstation called Fairlight CMI Series II, which consisted of one the first 8 track hard disk recorders bundled with propriety software.

I had also become an early adopter of a digital audio workstation called *Pro tools*, which is a computer software program used for professional multi-track sound recordings, mixing, editing, and pre- mastering.

In or about July or August 1999 I was commissioned by Artist & Repertoire ("A&R) executives working for UMG, IDJ and or RAF to utilize my talent to making world-class recording.

I was commissioned by UMG, IDJ and/or RAF on account of multiple factors, such as my specialized talents as a sound engineer, and my expertise working with Pro Tools, my professional track record in the music industry and my administrative skills in setting up and project managing recording sessions with major label recording artists.

Upon my commission, I was expected to perform a wide range of engineering and production roles, including the roles of engineer, producer, music programmer, *Pro Tools* editor, and project administrator in connection with the making of sound recordings featuring the performances of RAF- associated Artist.

In and about August of 1999, Jay Z heard of the sound recordings in which I engineered in collaboration with RAF rapper Beanie Sigel. He was impressed with the quality of my recording and established a business relationship with me.

During the collaboration period, I contributed to the making of forty-one (41) individual sound recordings, each of which were eventually released to the public bearing their own respective song titles.

At various times during the collaboration period, UMG agents asked me to safeguard album versions of the songs; instrumental versions; "7-inch single" mixes for television or live shows, and "clean" copies of the album versions (i.e. without profanity).

On November 16, 2000, I transmitted a notification to various agents of UMG, IDJ and RAF record label executives, including Tony Vanias, Linda Lee, and Kyambo "Hip-Hop" Joshua, amongst others.

In those written notifications I informed the IDJ executives that I was in possession of multi-track sound recordings made in collaboration with RAF artists, which I described as "masters." I even offered to "dump" the Pro Tools multi-track recordings to a 2-track DAT tape. I never received a response from UMG, IDJ, nor RAF regarding my written notifications.

For a period of almost 14 years, IDJ and UMG label executives who administered sound recordings on the RAF imprint knew or should have known that I was in possession my *Pro Tools* Outboard, the *Pro Tools* multi-track media devices, and 2-track DATS. Despite this knowledge, Neither UMG, IDJ, nor RAF took the time to inquire or respond.

Similarly, neither Jay Z nor any of his agents contacted me at any time after November 2000.

Carter knew or should have known that all of the multi-track sound recordings or 2-track tapes that were created during the Collaboration Period remained in my possession.

On April 17, 2014, Roc Nation's Century City-based litigation counsel, Miles Cooley, Esq. of Reed Smith LLP, was instructed to meet me in Westwood Village in Los Angeles, and go with me to my storage unit. After spending several hours cataloguing the valuable items that were in my possession, Cooley asked me if he could return the next day to complete the inventory check. I consented.

Consequently, now as of the evening of April 17, 2014, Cooley and his agents had knowledge of the exact address of the commercial storage unit where he later alleged "stolen property "was being kept and "held for ransom." They even knew the exact number and identity of my personal units within the storage facility.

Given Cooley and his affiliates expressed knowledge of the chattel's location at a commercial storage facility, it is legally impossible to conclude that I was engaged in a criminal extortion as Cooley's criminal complaint avers. Because Cooley and his affiliates knew the exact location of the property, there was no plausible way to threaten Cooley's agents with imminent destruction of the property. It is inconceivable and ludicrous to insinuate that anyone could force Cooley's agents to pay a "ransom" in exchange for the property as Cooley avers in his bogus complaint.

At that point, on the evening of April 17, 2014, if Cooley's affiliates thought the property was theirs, all he needed was to file a petition the next morning seeking the Courts appointment of a receiver. Or Cooley and his affiliates could have filed a civil lawsuit against me, and the storage unit operator in an action for replevin.

But Miles Cooley didn't want to go the civil route. Instead Cooley acted in a concert to unlawfully convert my valuable property through a "sham" criminal complaint. False accusations leveled at a private figure by a Hollywood celebrity (Jay Z) would enable Cooley's affiliates to reclaim my property by force.

In order to deprive me of my property Cooley decided to leverage Jay Z's famous trade name and goodwill to frame me, one who is only a private figure of ordinary means. After Cooley a Reed Smith LLP's litigation counsel spent TWO (2) DAYS cataloguing and itemizing my valuable property in plain and open view, in the middle of a commercial storage facility, Cooley's affiliates instructed him to call local police which are the Los Angeles Police Department (LAPD) and convince them (somehow) that I should be arrested for being in "Possession of stolen property."

On April 18, 2014, the LAPD seized my chattel, which continues to be held in the evidence by the LADP. {See CHAUNCEY MAHAN VS. ROC NATION, LLC, ROC-AFELLA RECORDS, LLC, SHAWN CARTER p/k/a" JAY Z, Case No. 14-cv-5075 (LGS) at Exhibit T} Before the date of April 18, 2014, none of Jay Z's agents, UMG, Roc Nation, nor any third party had ever reported the chattel as missing, lost or stolen. Yet Miles Cooley, acting on behalf of Roc Nation, placed his own name on the property receipt form issued by the LAPD, as if Roc Nation was the true rightful possessor of the chattel.

## CLAIM FOR RELIEF

20. As a direct and proximate result of defendant Juan Perez's conspiracy against the rights of a citizen with Miles Cooley by filing a bogus criminal complaint I was falsely arrested and my property was illegally confiscated.

21. As a direct and proximate result of defendant Miles Cooley's conspiracy against the rights of a citizen, and under the color of law with Juan Perez by erroneously declaring to LAPD officials that my property in which I allowed him to inventory in my storage had been stolen; I was falsely arrested and my property was illegally confiscated.

22. As a direct and proximate result of the failure of the City of Los Angeles Municipal cooperation to train it's subordinates, the Los Angeles Police Department and it's officers violated my civil rights by failing to investigate bogus charges initiated by the New York Police Department which lead to my illegal detainment and confiscation of my property which it still has in it's possession. The acts of it's officers displayed deliberate indifference to my constitutional rights.

23. LAPD officers, Officer Shepal; Detective Beth Shappard; Lt. Tim Torsney; and Detective Harvey Martin, displayed deliberate indifference to my constitutional rights by directly or indirectly confiscating my property illegally without a court order, and unconstitutionally depriving me of my liberty. Nor did they put me on notice that my property was confiscated and an opportunity to redeem it.

24. As a direct and proximate result of the failure of the City of New York, Municipal cooperation to train it's subordinates, the New York Police Department and it's officers violated my civil rights by filing a bogus police report, making up fictitious dates (only to comply with a long expired statue of limitations), and conspiring with Juan Perez, Miles Cooley, and the LAPD to illegally confiscate my property and deprive me of my liberty. The acts of it's officers displayed deliberate indifference to my constitutional rights.

25. NYPD officers, PAA Chudavala, officer who filed the report; Sergeant Merrill Michael, approving supervisor; and Lieutenant Kotlyard, signoff Supervisor displayed deliberate indifference to my constitutional rights by filing a criminal complaint with bogus charges with fictitious dates (only to comply with a long expired statue of limitations). These officer also conspired against rights of a citizen, and under the color of law.

26. WHEREFORE, plaintiff respectively prays that this court enter judgment granting plaintiff;

27. A judgment against the CITY OF LOS ANGELES, a municipal corporation; for the sum of Fifty Million dollars (50,000,000.00) in compensatory damages (for loss of property), punitive damages, and mental anguish.

28. A judgment against The City of Los Angeles; LAPD officers, Officer Shepal, Detective Beth Shappard, Lt. Tim Torsney; and Detective Harvey Martin jointly and severely in their Official capacities Ten Million dollars (10,000,000.00); and jointly severally One Million(1,000,000.00) in their individual capacities for punitive damages and mental anguish.

29. A judgment against CITY OF NEW YORK, a municipal corporation; for the sum of Fifty Million dollars (50,000,000.00) in compensatory damages (for loss of property), punitive damages, and mental anguish.

30. A judgment against The City of New York; NYPD officers, Sgt. Michael, PAA Chudavala, and Lt. Signoff jointly and severally in their Official capacities for the sum of Ten Million Dollars(10,000,000.00);

and jointly severally One Million (1,000,000.00) in their individual capacities for punitive damages and mental anguish.

31. A judgment against Miles Cooley in the sum of One Million dollars (1,000,000.00).

32. A judgment against Juan Perez in the sum of One Million dollars (1,000,000.00).

33. Treble damages

34. Court cost of this Civil Action

35. A jury trail

36. Intrest on my illegally confiscated property

37. Any other relief this court deems just, proper, and equitable

## VERIFICATION

I have read the foregoing complaint and hereby verify that the matters alleged therein are true, except as to the matters alleged on information belief, and as to those, I believe them to be true and correct.

Executed on this ___18___ day of April 2016.

Chauncey M. Mahan, MBA, M.S

## CERTIFICATE OF SERVICE

I Chauncey M. Mahan declare under penalty of perjury that a true and correct copy of the foregoing has been provided to the below listed parties.

CLERK OF COURT
United States District Court
Northern District of California
450 Golden Gate Ave.
San Francisco, CA 94102

_____ 4/18/16
Chauncey M. Mahan, MBA, M.S.
P.O. Box 1230 Market St. #307
San Francisco, CA 94102